UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MAURICIO CELIS, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-335 |
| § | |
| GUY WILLIAMS, *et al*, § | |
| § | |
| Respondents. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court are petitions for writ of habeas corpus filed by Mauricio Celis ("Petitioner")[1] pursuant to 28 U.S.C. § 2254. (D.E. 1) Petitioner was indicted and convicted of falsely holding himself out as a lawyer in two consolidated Nueces County cases. (D.E. 3). Petitioner filed two identical petitions challenging the Nueces County convictions and this Court ordered consolidation of the two cases in the interest of judicial economy. (D.E. 3). In response to the habeas petitions, Javed Syed, Director of the Nueces County Community Supervision & Corrections Department ("Respondent") filed this Motion for Summary Judgment. (D.E. 12).

Petitioner has brought two claims for habeas relief. First, he argues the trial judge who presided over his case was biased against him, and he was thereby denied his Fifth, Sixth and Fourteenth Amendment rights to a fair trial in front of an impartial judge and a

---

[1] Petitioner is currently on probation. He is considered in custody and may bring a habeas challenge. *See Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) (a person on probation "is in custody for purposes of the federal habeas corpus statute.") (internal quotations omitted).

reliable jury verdict. Second, he argues the statute under which he was convicted violates the First and Fifth Amendments because it is vague and overbroad on its face and as applied to him. In addition to contesting Petitioner's two claims on the merits, Respondent moves for Summary Judgment asserting Petitioner failed to bring his motion within the applicable limitations period.

For the reasons stated below, it is respectfully recommended that Respondent's Motion for Summary Judgment (D.E. 12) be **GRANTED**, Petitioner's Motion for Writ of Habeas Corpus (D.E. 1) be **DISMISSED** and any request for a Certificate of Appealability be **DENIED**.

## I.     JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. Venue is proper because Petitioner was convicted in Nueces County, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.    BACKGROUND

Petitioner is currently serving two concurrent, ten-year terms of probation, and is being supervised by District Judge Guy Williams, 148th Judicial District Court, and the Nueces County Community Supervision & Corrections Department, both respondents in this case. (D.E. 1 p. 2).

On November 16, 2007, in Cause No. 07-CR-4046-E, Petitioner was indicted with seven counts of third-degree felony violations of Texas Penal Code § 38.122(a), falsely holding oneself out as a lawyer. (D.E. 1 p. 3). On April 25, 2008, in Cause No. 08-CR-

1365-E, he was indicted with sixteen counts of the same offense. (D.E. 1 p. 5). The indictments were combined, for a total of 23 counts of falsely holding oneself out as a lawyer, and tried together before a jury. (D.E. 1 pp. 6-7). The combined trial, featuring more than 100 exhibits and testimony from 23 witnesses, was held in February 2009, before visiting Judge Mark Luitjen in the 148th Judicial District Court in Nueces County. (D.E. 1 pp. 3-41).

After two days of deliberation, the jury found Petitioner guilty on fourteen of the counts. (D.E. 1 p. 47). Specifically, the jury found Petitioner falsely stated he was an attorney licensed in Mexico on a business card, on a business website and in a professional liability insurance application; he had wrongly accepted nine checks for "attorney fees;" and he had signed on a line designated for an attorney in a settlement document. (D.E. 1 pp. 41-43). Petitioner's punishment was assessed at ten years probated confinement for each of the fourteen counts and a $10,000 fine. (D.E. 1 pp. 41-42).

Before Judge Luitjen formally sentenced him, Petitioner moved to recuse the judge and moved for a new trial. (D.E. 1 p. 43). In both motions he asserted the judge had "a personal bias or prejudice" against Petitioner. (D.E. 1 p. 43). Included with the motions were affidavits from seven of the jurors describing their beliefs about Judge Luitjen's bias attesting to the fact they believed Judge Luitjen to be biased against Petitioner and his counsel based on his facial expressions, tone, and manner of speaking, as well as his rulings in the courtroom. (D.E. 1 p. 43).

Judge Luitjen referred both pending motions to the presiding judge of the Fifth Administrative Judicial Region of Texas, Judge Manuel Banales. (D.E. 1 p. 43). Following a hearing in which six of the jurors testified to the veracity of their affidavits, Judge Banales recused Judge Luitjen, stating "the public… would conclude that the judge in the case was biased or prejudiced or gave the appearance of being so." (D.E. 1 p. 46). Judge Banales assigned the case to himself and formally sentenced Petitioner to ten years community supervision and a $10,000 fine. (D.E. 1 pp. 43-48).

While Petitioner's motion for new trial was still pending, the State moved to recuse Judge Banales. (D.E. 1 p. 47). Chief Justice Wallace Jefferson of the Texas Supreme Court appointed Judge Louis Sterns to preside over the motion to recuse, which he granted following an evidentiary hearing. Judge Sid Harle was appointed to preside over the case and subsequently denied the motion for a new trial. (D.E. 1 pp. 47-48).

Petitioner filed a direct appeal to the Texas Thirteenth Court of Appeals, which affirmed the trial court's judgment on all issues. (D.E. 1 pp. 48-51). He then filed a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals on five grounds for review. On February 1, 2012, the Court of Criminal Appeals granted review on the second, third and fourth grounds while the first and fifth form the basis for this petition. (D.E. 1 pp. 51-52).

On May 15, 2013, the Court of Criminal Appeals denied relief on the three claims which it had reviewed. Petitioner filed this habeas petition on August 12, 2014. (D.E. 1). Petitioner claims that (1) he was denied his right to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments and (2) Texas Penal Code § 38.122(a) is overbroad

4 / 20

and vague in violation of the First Amendment. Respondent filed the pending Motion for Summary Judgment on November 21, 2014 (D.E. 12) and Petitioner filed a response on January 20, 2015. (D.E. 16).

### III.     STANDARD

Respondent has moved for summary judgment. (D.E. 12). A court should grant summary judgment where a movant has shown "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). Ordinarily, in reviewing a motion for summary judgment, a court will construe all disputed facts in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

However, a federal court must review a summary judgment motion in a habeas case in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Subsection 2254(e)(1) of the statute overrides the ordinary presumption, and instructs courts that a state court's findings are presumed to be correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled in part on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004). Unless a petitioner is able to show that the state court was in error by "clear and convincing evidence," a federal court will presume that the state courts findings of fact are correct.

A federal court may only grant a writ of habeas corpus if a state court decision adjudicated on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In reviewing a state court's determination regarding the merit of a petitioner's habeas claim, a federal court cannot grant relief if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86, 101 (2011) (*quoting Yarborough v. Alvarado,* 541 U.S. 652 (2004)).

## IV. ANALYSIS

### A. LIMITATION

Respondent seeks summary judgment, arguing Petitioner's claims are barred by the one-year limitation period under AEDPA. (D.E. 12 p. 4) (*citing Lawrence v. Fla*, 549 U.S. 327, 331-32 (2007)). The one-year limitation period begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 623 F. 3d 222, 224 (5th Cir. 2010). Conclusion of direct review occurs upon denial of certiorari in the United States Supreme Court or 90 days after the final judgment of the highest state court. *Jimenez v. Quarterman*, 555 U.S. 113, 117 (2009).

In this case, Petitioner did not file for direct review in the United States Supreme Court. The expiration of the time for seeking such review occurred 90 days after the final judgment of the Texas Court of Criminal Appeals. The petition for discretionary review was denied on May 15, 2013, and the expiration of direct review period was 90 days

later, on August 13, 2013. Therefore, the one-year limitation period began on August 13, 2013. Petitioner's claim was timely filed on August 12, 2014.

### B. CLAIM ONE - JUDICIAL BIAS

Petitioner's first claim for habeas relief is that he was denied his right to a fair trial before an impartial, unbiased judge, and to a reliable jury verdict, in violation of the Fifth, Sixth and Fourteenth Amendments. (D.E. 1 p. 74-75). Petitioner alleges Judge Luitjen was biased against him and his counsel during trial. (D.E. 1 p. 74-75). He asserts this bias was shown by the judge's tone of voice, demeanor, facial expressions, attitude, conduct, words and rulings. (D.E. 1 p. 74-75).

When Petitioner directly appealed his case to the Thirteenth Court of Appeals, this claim formed the basis of counts one through six of his appeal. (D.E. 1 p. 49). The Thirteenth Court of Appeals affirmed the trial court's decision, and denied Petitioner's request, stating, "[w]e have concluded that appellant has failed to establish judicial bias." *Celis v. State*, 354 S.W.3d 7, 25 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). When Petitioner filed his petition for discretionary review (PDR), the Court of Criminal Appeals denied review of this issue. (D.E. 1 p. 63).

The due process clause of the Constitution guarantees a defendant's right to "a fair trial in a fair tribunal before a judge with no actual bias." *See, e.g., Bracy v. Gramley,* 520 U.S. 899, 904-05 (1997) (citation omitted). Although those constitutional guarantees require a judge to act impartially, they only set a floor of constitutionally acceptable behavior, not a "uniform standard." *Id.* at 904. If a judge is found to be biased to the

degree that it violates the constitutional guarantee, this is considered a "structural error," i.e., one which mandates automatic reversal. *See Tumey v. Ohio*, 273 U.S. 510 (1927).

There are two types of judicial bias recognized by the Supreme Court which may form the basis of a constitutional challenge: those biases that extend from an extrajudicial source (influences that come from outside the courtroom), or those that occur in the court room. *Buntion v Quarterman*, 524 F.3d 664, 673 (5th Cir. 2008).

Cases of presumptive bias form the majority the instances where the Supreme Court has found a judicial bias sufficient to violate due process. *Buntion*, 524 F.3d at 672. These are cases where a judge is unduly influenced by some feature outside the realm of the case that influences his impartiality inside the case. Examples of this type of presumptive bias include cases where:

> 1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005).

Here, no external influence has been alleged. As the Thirteenth Court of Appeals stated, Petitioner has alleged no facts that occurred outside the courtroom that would influence the judge's behavior inside of it. *Celis v. State*, S.W.3d 7, 25 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013) ("Appellant's challenge to Judge Luitjen is based solely on allegations that the judge displayed bias in the courtroom.") Petitioner has not alleged the judge had any undue interest in the

outcome of the case or had a predisposed view of the petitioner that would constitute a presumptive bias.

In the absence of such an extrajudicial influence, Petitioner must show that the judge presented an actual bias in order to substantiate a violation of due process. Only if the judge's actions in the courtroom "revealed such a high degree of favoritism or antagonism as to make fair judgment impossible" will there be grounds for relief. *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

It is clear judges may exhibit even strongly animated expressions in the courtroom without breaching the floor guaranteed by the constitution. *Id.* at 555-56 ("Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.")

Here, the judge's behavior simply does not rise to such a level. The actions alleged by Petitioner — the judge's "tone of voice, demeanor, facial expressions, attitude, conduct…" — fall into the category of "efforts at courtroom administration" that "remain immune." *Liteky*, 510 U.S. at 556. Judges are not perfect, and ordinary displays that are common to all human beings do not violate constitutional guarantees of fairness.

The juror affidavits and testimony stating they believed the judge to be "biased" are not dispositive. (D.E. 1). Jurors are not familiar with Supreme Court precedent, and their use of the word "bias" cannot be shown to be congruous with the term-of-art as used by the Supreme Court. *See, e.g., Liteky*, 510 U.S. at 552. When a judge is found to have "bias or prejudice" in a court of law, the words have a very specific connotation and

definition: "the words connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved or because it rests upon knowledge that the subject ought not to possess… or because it is excessive in degree." *Id.* (emphasis in original).

But that is not what the jurors described.  What the jurors *did* describe could easily fall into the category already designated as permissible behavior: impatience (stating the judge "was in a hurry to get the trial over with"), annoyance (stating the judge "often acted as if he wanted to be somewhere else"), and even anger (stating the judge "seemed upset.").  (D.E. 1).  The jurors may have believed the judge to be "biased" by their definition of the word, but that does not mean the judge's actions rose to an unconstitutional level.  *Liteky*, 510 U.S. at 552 ("Not all unfavorable disposition toward an individual (or his case) is properly described by [the terms 'bias or prejudice'].")  The judge's behavior, as described by the seven attesting jurors, did not prevent the trial form being a fair one.

Petitioner also points to unfavorable rulings as signs of the judge's partiality toward him.  Absent additional evidence, judicial rulings seldom form the basis for a claim of judicial bias.  *Liteky*, 510 U.S. at 555 ("[J]udicial rulings… can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved.").

Here, the rulings Petitioner describes do not amount to a violation of constitutionally guaranteed fairness.  Absent an extrajudicial source, it cannot be said that the judge's rulings evidence an actual bias, and they can only be viewed as the ordinary

opinions formed by a judge in the ordinary course of judicial proceedings. Petitioner has failed to show unfavorable rulings are evidence of partiality.

Petitioner has failed to form a claim of judicial bias sufficient to establish a constitutional violation. Therefore, it is recommended that his first claim for habeas relief be **DISMISSED**.

      C.      **CLAIM TWO – OVERBREADTH AND VAGUENESS**

Petitioner claims Texas Penal Code § 38.122(a) is unconstitutionally overbroad and vague in violation of the First Amendment. When Petitioner directly appealed his case to the Thirteenth Court of Appeals, this claim formed the basis of points of error ten through thirteen. (D.E. 1 p. 126). The Thirteenth Court of Appeals affirmed the trial court's decision, and denied Petitioner's request, stating the law was not overbroad or vague in violation of the First Amendment. *Celis*, 354 S.W.3d at 32-38. The Court of Criminal Appeals denied discretionary review of this issue. (D.E. 1 p. 65).

The Texas Penal Code explains the offense of Falsely Holding Oneself Out as a Lawyer, as:

> A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE § 38.122 (a).

Petitioner claims "lawyer" and "in good standing" are ambiguous and do not provide fair notice of what conduct is proscribed. He claims the law places a content-

11 / 20

based restriction on protected speech and is a violation of the First Amendment. He argues the law is overbroad and vague facially and as applied to individuals licensed to practice law outside of Texas. (D.E. 1 p. 130). Respondent argues this Court should not extend the overbreadth and vagueness doctrine to professional advertising. (D.E. 12).

    1.    *Overbreadth*

Petitioner may attack an overly broad statute on First Amendment grounds without demonstrating the particular facts of the case result in an unconstitutional application. *See*, *Bigelow v. Virginia*, 421 U.S. 809, 815-16 (1975). In an overbreadth challenge a court considers "possible applications of the statute in other factual contexts besides that at bar." *NAACP v. Button*, 371 U.S. 415, 432 (1963). The overbreadth doctrine thereby departs from the traditional rule that a person may not challenge a statute simply for the possibility it could be applied unconstitutionally in circumstances outside the facts of the case. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977) (citations omitted).

To qualify as overbroad, a law must regulate a substantial amount of constitutionally protected conduct. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). Petitioner was found guilty of holding himself out to be lawyer on business cards and on a business website. (D.E. 1 p. 175). If these actions can be construed as speech, they are analogous to advertising, in that these actions are commercial in nature. Although petitioner does not expressly concede his conduct qualifies as commercial speech, the actions were taken with the intent to propose a commercial transaction. If any constitutional interest is implicated here, it is only the attenuated interest in false or misleading commercial information.

Commercial speech is not granted the level of protection of non-commercial speech because advertising is linked to commercial well-being and "it seems unlikely that such speech is susceptible to being crushed by overbroad regulation." *Bates*, 433 U.S. at 381 (the overbreadth analysis applies weakly, if at all, in commercial context). "[C]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989) (internal quotations omitted). Commercial speech must do more than "propose a commercial transaction" to receive full First Amendment protections. *Bates*, 433 U.S. 364 (commercial speech serves to inform the public of the availability, nature, and prices of services, and plays a role in the allocation of resources in a free enterprise system).

However, unlike stating price information, Petitioner's misleading actions do not serve to educate the public or provide information to justify First Amendment protections. "Indeed, the public and private benefits from commercial speech derive from confidence in its accuracy and reliability" *Bates*, 433 U.S. at 383. When the content is misleading, it undermines the entire purpose of First Amendment protections and cannot justify application of the overbreadth doctrine.

Petitioner applies intermediate scrutiny, and argues the government failed to establish a "substantial" governmental interest. However, under *Central Hudson*, the government may freely regulate commercial speech that is misleading or concerns unlawful activity. *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623-24 (1995) (*citing*

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)). Only when the communication is neither misleading nor related to unlawful activity will a court require the government to prove a substantial interest. *Central Hudson*, 447 U.S. at 564. Petitioner's actions are misleading commercial activity and do not provide information that serves the public. Therefore, the state may make laws regulating such communications without the need to justify them with a substantial interest. For these reasons, it is recommended that the overbreadth challenge fail.

  2. *Vagueness*

Once it is determined the overbreadth doctrine does not apply, a court should "examine the vagueness challenge and should uphold such challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman*, 455 U.S. at 489. The most obvious violation is "where person A, not licensed to practice law, tells another individual that person A is a lawyer and will represent the individual in court for a fee." *Ex parte Manrique*, 40 S.W. 3d 552, 555 (Tex. App.—San Antonio, 2001, no pet.) (holding Tex. Penal Code § 38.122 (a) is not vague and is not a violation of the Constitution). There are many scenarios in which the law is clearly valid and therefore the law is not facially vague.

Petitioner also challenges the statue claiming it is vague as applied to the conduct of foreign lawyers. Ordinarily, "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness as applied to other conduct." *Parker v. Levy*, 417 U.S. 733, 756 (1974). The Supreme Court explains a plaintiff who engages in some conduct clearly prohibited by the law cannot complain of the vagueness of that law as

14 / 20

applied to other conduct not before the court. *Vill. of Hoffman*, 455 U.S. at 495. However, this requirement has been relaxed in the First Amendment context. *United States v. Williams*, 553 U.S. 285, 304 (2008). Therefore, the merits of the vagueness challenge are addressed below.

The as applied vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. *Id*. The Fifth Amendment demands that laws be sufficiently clear to give persons of ordinary intelligence a reasonable opportunity to know what is prohibited. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Furthermore, laws must be sufficiently clear to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972).

Laws need not be perfectly clear and precise to overcome a vagueness challenge. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). Criminal statutes are struck down as vague only when the terms require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id*. at 20. Webster's Third Dictionary defines lawyer as "a specialist in or practitioner of law: one (as an attorney, counselor, solicitor, barrister, or advocate) whose profession is to conduct lawsuits for clients or to advise as to the prosecution or defense of lawsuits or as to legal rights and obligations in other matters." *Ex parte Manrique*, 40 S.W. 3d at 555. Black's Law dictionary defines lawyer as "one who is licensed to practice law. Black's Law Dictionary (9th ed. 2009). Both of these definitions are consistent with the textual context surrounding the word lawyer. Section 38.122 (a) narrows the definition by stating "currently licensed to practice law." TEX. PENAL CODE § 38.122(a).

Petitioner explains that the trial court called the statute "inartfully drafted" (D.E. 1, p. 192), however, poor drafting does not prove the statute is impermissibly vague. This Court need not state an accepted definition of "lawyer." All that is required by the Fifth Amendment is that persons of ordinary intelligence are given a reasonable opportunity to know what is prohibited. The holding in *Ex parte Manrique*, the definitions in Webster's and Black's Law dictionaries and the narrowing context provided by the statute are sufficient to give a reasonable opportunity to know what is prohibited.

Petitioner argues there was no fair notice that the receipt of a check would be prohibited under the statute. However, this argument is unpersuasive because it could not be clearer that receiving a check falls under any reasonable interpretation of "with intent to obtain economic benefit."

The terms in Texas Penal Code § 38.122 (a) have settled common usage consistent with dictionary definitions. The textual context helps confirm the dictionary definitions. The statute is not vague and does not violate the Constitution. Petitioner has failed to form a claim of vagueness or overbreadth to establish a constitutional violation. Therefore, it is recommended that his second claim for habeas relief be **DISMISSED**.

## V.     CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA"). A District Court ruling on a

petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just rule on would be repetitious." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added)

In Petitioner's case, reasonable jurists could not debate the dismissal or denial of the Petitioner's §2254 petition on substantive or procedural grounds, nor find that the issues are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327.  Accordingly, it is respectfully recommended the Court not issue a certificate of appealability.

## VI.   RECOMMENDATION

A federal court may only grant a writ of habeas corpus if a state court decision adjudicated on the merits "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254 requires a court to determine what arguments support or could support the state court decision, then ask whether it is possible for fair minded jurists to disagree that the arguments are inconsistent with precedent. *Harrington v. Richter*, 562 U.S. 86, 88 (2011). Whether or not this Court would reach the same conclusion, federal habeas relief is only appropriate where the state court decision is incorrect and unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19, 26-27 (2002).

Petitioner has failed to state a constitutional violation sufficient to meet this standard. He did not establish unreasonable or incorrect application of law or unreasonable interpretation of the facts. The facts Petitioner describes do not amount to a violation of constitutionally guaranteed fairness. Petitioner also failed to establish unconstitutional vagueness or overbreadth of Texas Penal Code § 38.122(a). There is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a)

For the reasons stated above, it is respectfully recommended that Respondent's Motion for Summary Judgment (D.E. 12) be **GRANTED**, Petitioner's Motion for Writ of

Habeas Corpus (D.E. 1) be **DENIED** and any request for a Certificate of Appealability be **DENIED**.

ORDERED this 4th day of August, 2015.

                                                             Jason B. Libby
                                          United States Magistrate Judge

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).